COMMONWEALTH of Pennsylvania

v.

CITY OF CUMBERLAND, MARYLAND.

COMMONWEALTH of Pennsylvania

v.

EVITTS CREEK WATER COMPANY.

COMMONWEALTH of Pennsylvania

v.

Clifford T. STUMPF.

Appeal of COMMONWEALTH of Pennsylvania, Appellant.

Commonwealth Court of Pennsylvania.

Argued Sept. 15, 1995.
Decided Dec. 7, 1995.

Jerome T. Foerster, Deputy Attorney General, for appellant.

Gregory Barton Abeln, for appellees.

Before DOYLE and NEWMAN, JJ., and CHARLES P. MIRARCHI, Jr., Senior Judge.

NEWMAN, Judge.

The Commonwealth appeals from an order of the Court of Common Pleas of Bedford County (trial court) that granted, in part, a petition for a writ of habeas corpus filed by the City of Cumberland, Maryland, Evitts Creek Water Company (ECWC) and Clifford T. Stumpf (Stumpf) (collectively, Defendants), and dismissed five counts of a criminal complaint against them. We reverse.

ECWC, located in Cumberland Valley Township, Bedford County, is owned by the City of Cumberland, Maryland (City), and provides the City with drinking water. Stumpf is the superintendent of the facility. On December 11, 1986, the Department of Environmental Resources (DER) issued a National Pollutant Discharge Elimination System (NPDES) Permit to ECWC. The permit sets limits on the amounts of aluminum and manganese that ECWC can discharge.

On May 4, 1994, the Environmental Crimes Section of the Office of Attorney General charged Defendants with five counts of violating The Clean Streams Law[1] (Law) and four counts of violating the Fish and Boat Code[2] (Code). A district justice held a preliminary hearing on July 15, 1994, after which Defendants were bound over for trial. On August 3, 1994, Defendants filed a petition for a writ of habeas corpus in which they sought to have the complaint dismissed on the basis that the charges against them under the Law were brought pursuant to a penalty provision rather than a substantive provision, and that the sections of the Code they were charged with violating are unconstitutionally broad. The trial court held a hearing on September 19, 1994, following which it issued an order granting the habeas corpus petition with respect to the counts of

the complaint under the Law, but denying the habeas corpus petition with respect to counts of the complaint under the Code. The Commonwealth appeals from this order.

On appeal to this court, the Commonwealth raises three issues: (1) whether the trial court erred in ruling that the Commonwealth could not proceed under Section 602(b) of the Law, 35 P.S. § 691.602(b); (2) whether the trial court erred in dismissing the counts under the Law in the absence of prejudice to Defendants; and (3) whether Defendants improperly sought relief by means of a petition for writ of habeas corpus.

■ With regard to the first issue, the following five counts appear in the criminal complaint brought against the defendants:

The acts committed by the accused were:

COUNT 1: *Penalties:* (Pennsylvania Clean Streams Law), 35 P.S. § 691.602(b)—a misdemeanor of the third degree as defined by 35 P.S. § 691.602(b), to wit: The defendant, either acting alone or as an accomplice of another, did on or about May 6, 1992 wilfully and/or negligently violate the effluent discharge limitation condition of NPDES permit no. 0110744 for the parameter of aluminum.

COUNT 2: *Penalties:* (Pennsylvania Clean Streams Law), 35 P.S. § 691.602(b)—a misdemeanor of the third degree as defined by 35 P.S. § 691.602(b), to wit: The defendant, either acting alone or as an accomplice of another, did on or about July 13, 1992 wilfully and/or negligently violate the effluent discharge limitation condition of NPDES permit no. 0110744 for the parameters of aluminum and manganese.

COUNT 3: *Penalties:* (Pennsylvania Clean Streams Law), 35 P.S. § 691.602(b)—a misdemeanor of the third degree as defined by 35 P.S. § 691.602(b), to wit: The defendant, either acting alone or as an accomplice of another, did on or about May 5, 1992 to July 13, 1992 wilfully and/or negligently violate the test procedures condition (part 3(e), page 7) of

---

1. Act of June 22, 1937, P.L. 1987, *as amended,* 35 P.S. §§ 691.1–691.1001.

2. 30 Pa.C.S. §§ 101–7314.

NPDES permit no. 0110744 by failing to utilize a "digestion" procedure prior to analyzing samples.

COUNT 4: *Penalties:* (Pennsylvania Clean Streams Law), 35 P.S. § 691.602(b)—a misdemeanor of the third degree as defined by 35 P.S. § 691.602(b), to wit: The defendant, either acting alone or as an accomplice of another, did on or about May 5, 1992 to July 13, 1992 wilfully and/or negligently violate the test procedures condition (part 3(e) of NPDES permit no. 0110744 by filtering the sample through a paper towel prior to analyzing samples.

COUNT 5: *Penalties:* (Pennsylvania Clean Streams Law), 35 P.S. § 691.602(b)—a misdemeanor of the third degree as defined by 35 P.S. § 691.602(b), to wit: The defendant, either acting alone or as an accomplice of another, did on or about May 5, 1992 to July 13, 1992 wilfully and/or negligently violate the test procedures condition (part 3(f), page 7) of NPDES permit no. 0110744 by failing to record information required by that permit condition.

Section 602(b) of the Law, the provision under which Defendants were charged, states:

Section 602. Penalties

(b) Any person or municipality who wilfully or negligently violates any provision of this act, any rule or regulation of the department, any order of the department, or any permit issued pursuant to the act is guilty of a misdemeanor of the third degree, and upon conviction, shall be subject to a fine of not less than two thousand five hundred dollars ($2,500) nor more than twenty-five thousand dollars ($25,000) for each separate offense or to imprisonment in the county jail for a period of not more than one year or both.

Defendants argued before the trial court that Section 602(b) simply sets forth a penalty, and accordingly they could not be charged under this provision. In response, the Commonwealth argued that Section 602(b) contains the following elements of a crime: the willful or negligent violation of any condition of any permit that was issued pursuant to the

Law. Accordingly, the Commonwealth maintained that Section 602(b) substantively prohibits violating a condition of a permit.

To determine if Section 602(b) is a penalty provision, the trial court examined other sections of the Law that are clearly substantive. The trial court considered Section 611, which states:

It shall be unlawful to fail to comply with any rule or regulation of the department or to fail to comply with any order or permit or license of the department, to violate any of the provisions of this act or rules and regulations adopted hereunder, or any order or permit or license of the department, to cause air or water pollution, or to hinder, obstruct, prevent or interfere with the department or its personnel in the performance of any duty hereunder or to violate the provisions of 18 Pa.C.S. section 4903 (relating to false swearing) or 4904 (relating to unsworn falsification to authorities). Any person or municipality engaging in such conduct *shall be subject to the provisions of sections 601, 602 and 605.*

35 P.S. § 691.611 (emphasis added). We note that Section 601 provides for abatement of any activity or condition declared to be nuisance under the Law. Section 605 provides for civil penalties for violation of the Law.

The trial court also considered Section 307(a), which states, in relevant part:

No person or municipality shall discharge or permit the discharge of industrial wastes in any manner, directly or indirectly, into any of the waters of the Commonwealth unless such discharge is authorized by the rules and regulations of the department or such person or municipality has first obtained a permit from the department. . . .

35 P.S. § 691.307(a).

The trial court noted that while Section 611 and 307 each prohibit the discharge of waste into the waters of the Commonwealth, neither section states a penalty for violation. However, Section 611 specifically refers to three penalty provisions: Section 601 (Abatement of nuisances; restraining violations),

Section 602 (Penalties) and Section 605 (Civil penalties generally). We agree with the following analysis made by the trial court:

> Where the General Assembly has expressly defined a crime in one section of a statute and expressly referred to another section for the penalty, it is logical to assume that charges may only be filed under either Sections 611 or 307. It is illogical to assume that the General Assembly intended Section 602(b) to be anything other than a penalty provision where it drafted other substantive provisions that more clearly define the proscribed conduct. Cf. *Commonwealth v. Fleetwood Borough Authority*, [21 Pa.Cmwlth. 349], 346 A.2d 867 (Pa.Cmwlth.1975) (where the defendant was charged under Section 202 of the Clean Streams Law, the court held that even though Section 602, the penalty section, was not pleaded, the defendant may be subject to penalties under it).

Trial Court opinion at 10–11.

Accordingly, we conclude that the trial court did not err in determining that Section 602 is a penalty provision rather than a substantive provision.

∎ The Commonwealth next argues that the trial court erred in dismissing the charges against Defendants. In support of this position, the Commonwealth cites Pa. R.Crim.P. 150, which provides:

> A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, summons, or warrant, or a defect in the procedures of this Chapter, unless the defendant raises the defect before the conclusion of the preliminary hearing and the defect is prejudicial to the rights of the defendant.

Our review of the record indicates that Defendants raised the issue of defects in the complaint at the preliminary hearing. Therefore, the trial court properly determined that the issue before it was whether charging Defendants under Section 602(b) of the Law was prejudicial to their rights. The trial court determined that it was, and dismissed the corresponding counts of the complaint.

The Commonwealth maintains that the complaint notified Defendants of the date of the violations, the number of the NPDES permit that was violated, and the specific conduct that violated the permit. As previously noted, this conduct included violation of the limitation on discharge of aluminum and manganese, failure to use a "digestion" procedure prior to analyzing samples, filtering a sample through a paper towel before submitting it to analysis, and failing to record information required by the permit. The trial court concluded that "even though [D]efendants were apprised of which of their actions were considered to be violations, [D]efendants, charged only under the penalty provision of the statute, received no notice of which particular section of the Clean Streams Law they would be called upon to defend." Trial Court opinion at 12. For this reason the trial court dismissed the charges against the Defendants.

∎ Prior to its amendment in 1982, Pa. R.Crim.P. 150 distinguished between informal defects and substantive defects. Where an informal defect existed in a complaint, the case was not dismissed. An amendment to the complaint was permitted at any time to remedy the defect. Where a substantive defect existed in a complaint, the defendant was discharged unless he waived the defect. However, a new complaint could be issued to correct the defect. The comment to amended Pa.R.Crim.P. 150 states that the distinction between informal and substantive defects has been eliminated, and that the court must now determine whether actual prejudice to a defendant's rights has occurred.

Defendants note that in *Commonwealth ex. rel. Fitzpatrick v. Mirarchi*, 481 Pa. 385, 390, 392 A.2d 1346, 1348 (1978), our Supreme Court held that "[t]he omission of an offense from a complaint amounts to a 'substantive defect' which cannot be remedied by amending the complaint." However, in *Commonwealth v. Thomas*, 278 Pa.Superior Ct. 39, 419 A.2d 1344 (1980), Superior Court noted that where an amendment is sought, the inquiry should focus on whether the offense specified in the original complaint evolves from the same set of facts as averred in the amended complaint. The *Thomas* court con-

cluded that if the offenses arise from identical facts, the defendant is on notice regarding his alleged criminal conduct, and therefore is not prejudiced. The *Thomas* court further held that prejudice is not shown where the defendant is informed of the conduct that the prosecuting authority deems actionable.

In this case the trial court determined that the complaint advised Defendants of the actions that violated the Law. Therefore, we conclude that the trial court erred in dismissing the first five counts of the complaint.

■ The Commonwealth further argues that the trial court erred by entertaining the Defendants' petition for a writ of habeas corpus. We disagree. In *Commonwealth v. Hetherington*, 460 Pa. 17, 23, 331 A.2d 205, 209, our Supreme Court held that "[t]he established and accepted method for testing a finding of a prima facie case pre-trial, within this jurisdiction, has been by a writ of habeas corpus." Accordingly, the trial court did not err by permitting the Defendants to challenge the district justice's determination by seeking habeas corpus relief.

While the trial court correctly determined that Section 602 of the Law is a penalty provision, we hold that the trial court erred in dismissing the counts under the Law because the Defendants were not prejudiced by the defects in the complaint. Accordingly, we reverse.

### ORDER

AND NOW, December 7, 1995, we reverse the order of the Court of Common Pleas of Bedford County.