**David POLICANO, Petitioner–Appellee,**

v.

**Victor T. HERBERT, Respondent–Appellant.**

**Docket No. 04–5518–pr.**

United States Court of Appeals, Second Circuit.

Argued: July 11, 2005.

Decided: June 21, 2006.

Rhea A. Grob, Assistant, District Attorney (Charles J. Hynes, District Attorney Kings County, Leonard Joblove & Ann Bordley, Assistant District Attorneys, of counsel), Brooklyn, NY, for Respondent–Appellant.

Richard Ware Levitt, New York, NY, for Petitioner–Appellee.

Before POOLER and SACK, Circuit Judges, and GARAUFIS, District Judge.*

PER CURIAM.

On November 15, 2005, this panel filed an opinion in this matter. *See Policano v. Herbert*, 430 F.3d 82 (2d Cir.2005). A copy of that opinion is attached for the convenience of the New York Court of Appeals.

A summary of the factual background of this case is set forth in *Policano*, 430 F.3d at 84–86. The Clerk of this Court will transmit to the Clerk of the Court of Appeals of the State of New York a complete set of the briefs, appendix, and record filed by the parties in this Court. They reflect, at greater length and in more detail, the facts underlying this appeal.

This Court's mandate with respect to this appeal has been held pending further consideration. Upon such further consideration, and upon consultation with all the other active members of the Court, the panel certifies the questions set forth below to the New York Court of Appeals.

Because both the state and the clarity of relevant New York law *at the time of Policano's conviction* are (1) issues of state law as to which the New York Court of Appeals has not spoken, (2) dispositive

* The Hon. Nicholas G. Garaufis, of the United States District Court for the Eastern District of New York, sitting by designation.

of the federal questions before us, and (3) important and likely to recur, in accordance with Second Circuit Local Rule § 0.27 and New York Court of Appeals Rule of Practice 500.27, the Second Circuit certifies to the New York Court of Appeals the following questions:

1. On March 30, 2001 (the date on which petitioner Policano's conviction became final), under the law of the State of New York as established by, *inter alia, People v. Gallagher,* 69 N.Y.2d 525, 516 N.Y.S.2d 174, 508 N.E.2d 909 (1987), where the evidence produced at trial indicated that if the defendant committed the homicide at all, he committed it with the conscious objective of killing the victim, would a jury be permitted to find that the elements of depraved indifference murder were satisfied beyond a reasonable doubt?

2. At the time Policano's conviction became final, what were the established elements of depraved indifference murder?

3. Does the interpretation of N.Y. Penal Law § 125.25(1) and (2) set forth in *People v. Payne,* 3 N.Y.3d 266, 270, 786 N.Y.S.2d 116, 117, 819 N.E.2d 634 (2004) and *People v. Gonzalez,* 1 N.Y.3d 464, 467, 775 N.Y.S.2d 224, 226, 807 N.E.2d 273 (2004), state the correct interpretation of the law of New York with respect to the elements of depraved indifference murder on the date Policano's conviction became final?

In formulating the questions as we have, we do not intend to limit the scope of the Court of Appeals' analysis or its response. The certified questions may be deemed expanded to cover any pertinent further issue that the Court of Appeals thinks it appropriate to address.

We are aware that certification of questions of what state law was in the past is unusual. We also note that certification of questions of criminal law is not common. In certifying under these circumstances, however, we are guided by *Fiore v. White,* 528 U.S. 23, 120 S.Ct. 469, 145 L.Ed.2d 353 (1999), in which the United States Supreme Court certified to the Pennsylvania Supreme Court, pursuant to a certification procedure similar to that of the New York Court of Appeals, *see id.* at 31, 120 S.Ct. 469, a question of what the criminal law of Pennsylvania was in the past. It did so, as here, in order to determine the state of the law at the time a federal habeas petitioner's conviction became final.

\* \* \*

The goal of this certification opinion is to obtain from New York's highest court its view of the relevant principles of New York law—not to tell that Court how, in our view, New York law ought to be interpreted. It therefore does not seem to us to be appropriate to respond here in detail to the interpretation of New York and federal law offered by the lengthy dissent from denial of en banc review—a dissent, incidentally, which is being issued despite the fact that no party to these proceedings has sought rehearing by the panel or by the Court en banc and which is based on arguments that, for the most part, have never been made by the state or addressed by the petitioner. We think, nonetheless, that several matters warrant a brief response at this time.

First, this case is, and has been since it was first assigned to this three-judge panel, before this panel alone. It is the panel—speaking for the Court, of course, but the panel nonetheless—that has, with the urging of a majority of the court, sought the assistance of the Court of Appeals. This same panel has posed and certified the questions set forth above and will be required to apply any answers the Court of Appeals provides to determine whether Policano's petition for habeas corpus was

properly granted by the district court. *See* 28 U.S.C. § 2254; *Jackson v. Virginia*, 443 U.S. 307, 323, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Although we note above that the certified questions "may be deemed expanded to cover any pertinent further issue that the Court of Appeals thinks it appropriate to address," including those suggested by the dissenters, the panel respectfully requests the Court of Appeals to address in any event the three questions the panel has certified.

Second, although the dissenters express their dismay that, in their view, Policano "likely 'gets away with murder,'" Dissent at 453 F.3d 79, at 80,[2] a concern the panel of course shared, *see Policano*, 430 F.3d at 93, we do not understand them to deny that Policano could not be convicted of depraved indifference murder under New York law as articulated in *Gonzalez* and *Payne*.[3] And although the dissent suggests that a wrongful conviction for depraved indifference murder rather than intentional murder amounts to little more than harmless error, we note that the majority of the New York Court of Appeals has rejected that view. *See People v. Suarez*, 6 N.Y.3d 202, 207, 844 N.E.2d 721, 725, 811 N.Y.S.2d 267, 271 (2005) (reversing conviction for depraved indifference murder and expressing concern that juries may "mistakenly believe that depraved indifference murder is a lesser offense than intentional murder and are reluctant to convict of the 'most serious' charge"); *cf. Jackson*, 443 U.S. at 323–24, 99 S.Ct. 2781 ("The constitutional necessity of proof beyond a reasonable doubt is not confined to those defendants who are morally blame-less. Under our system of criminal justice even a thief is entitled to complain that he has been unconstitutionally convicted and imprisoned as a burglar." (citation omitted)). Thus, the dissenters recoil not just at the conclusion of the panel opinion but at what is undoubtedly current New York law.

Third, the dissenters, apparently animated by their disagreement with current New York law, argue at length that the law used to be different. We think the purpose of certification is to ask the New York Court of Appeals that question, rather than to urge them to adopt our own interpretations of state law. We do respectfully point out, however, that New York judges have not necessarily agreed with the dissenters' views. *See People v. Gonzalez*, 554 N.Y.S.2d 506, 508, 160 A.D.2d 502, 504 (1st Dep't 1990) (citing *Gallagher* and concluding that "the record clearly establishes that if defendant was guilty of shooting [the victim], he was guilty of an intentional shooting or no other. Thus, the submission of depraved mind murder was improper and the conviction thereon is vacated, and the count dismissed." (internal citation and quotation omitted)); *People ex rel. Parsons v. Walsh*, 800 N.Y.S.2d 853, 854, 21 A.D.3d 1169, 1169 (3d Dep't 2005) (stating that *Payne* did not declare a retroactive change in the law but, rather, applied existing case law), *leave to appeal denied*, 6 N.Y.3d 702, 843 N.E.2d 1156, 810 N.Y.S.2d 416 (2005); *cf. People v. Butler*, 84 N.Y.2d 627, 632–34, 644 N.E.2d 1331, 1335–36, 620 N.Y.S.2d 775, 779–80 (1994) (upholding a trial

---

**2.** It should not go unremarked that Policano will "get [ ] away with murder" because of, not the panel opinion, but the assumed operation of either the Fifth Amendment's Double Jeopardy Clause or New York Criminal Procedure Law § 40.20, which may offer greater protection than the constitutional provision.

We say "assumed" because that is not an issue that has ever been brought before us for decision. *See Policano*, 430 F.3d at 93 n. 6.

**3.** The dissent attempts to distinguish this case from *Gonzalez, see* dissent at 453 F.3d at 84 n. 8, but not *Payne*.

court's refusal to submit lesser-included offenses to the jury and explaining that evidence of intoxication does not automatically entitle a jury to find that a defendant acted recklessly).

Fourth, the dissent worries that "[t]he *Policano* decision, if left to stand, may well unleash a rash of habeas challenges by other convicted New York State murderers." Dissent at 453 F.3d at 82. More than a year and a half after the district court's opinion and judgment in this case, and more than six months after this panel's opinion was published, the dissent cites no authority for that proposition beyond five petitions for habeas corpus, not one of which was granted.[4] *Id.* at 82 n. 5. As the time period before *Payne* and *Gonzalez* fast recedes, the asserted flood of cases is, judging by what we and the dissenters have been able to discover, scarcely a drop in the bucket.

The likely consequences of the panel opinion may be better gauged by the response of the Office of the Kings County District Attorney, which represented the respondent throughout: It has never sought either a rehearing before this panel or before the Court en banc.[5]

Finally, the first footnote in the dissenting opinion might be taken to suggest that Policano's release from custody pending resolution of this appeal resulted solely from the actions of the district court and, perhaps, this panel. That is not so. The district court ordered the state "either to commence further proceedings against Policano or release him within sixty days of this order. Though I do not stay this order pending appeal, that sixty days will allow respondent to seek a stay in the court of appeals." *Policano v. Herbert,* 2004 WL 1960203, at \*17, 2004 U.S. Dist. LEXIS 17785, at \*48–\*49 (E.D.N.Y. Sept.7, 2004). On December 28, 2004, a different panel of this Court denied such a stay pending appeal of the district court's judgment. The order stated that the stay was being denied "because the appellant has failed to satisfy the requirements for a stay. *See Hilton v. Braunskill,* 481 U.S. 770, 774–79, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987)." Order of Dec. 28, 2004. *Hilton* provides that in determining whether to grant a stay,

> the possibility of flight should be taken into consideration. . . . We also think that, if the State establishes that there is a risk that the prisoner will pose a danger to the public if released, the court may take that factor into consideration in determining whether or not to enlarge him. The State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal is also a factor to be considered; it will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served.

*Hilton,* 481 U.S. at 777, 107 S.Ct. 2113.

\* \* \*

---

4. As the panel opinion anticipated, *see Policano,* 430 F.3d at 90 (2d Cir.2005), courts have had little trouble distinguishing *Policano. See, e.g., Guzman v. Greene,* 425 F.Supp.2d 298, 306 (E.D.N.Y.2006) (denying a petition for habeas because "unlike [in] *Policano,* the defendant, even if 'recklessly creating a grave risk of death,' was not 'creating a virtual certainty of death born of an intent to kill.' *Policano,* 430 F.3d at 89 (internal citation omitted)"); *People v. Parker,* 29 A.D.3d 1161, 814 N.Y.S.2d 818, 821 (3d Dep't 2006) (distinguishing *Policano* on the ground that the case at bar "was not a preplanned revenge shooting").

5. The call for rehearing en banc was made *sua sponte.*

It is therefore hereby ORDERED that the Clerk of this Court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below, together with a complete set of the briefs, appendix, and record filed in this Court by the parties. This panel retains jurisdiction so that after we receive a response from the New York Court of Appeals, we may dispose of the appeal.

## CERTIFICATE

The foregoing is hereby certified to the Court of Appeals of the State of New York, pursuant to United States Court of Appeals for the Second Circuit Local Rule § 0.27 and New York Court of Appeals Rule of Practice 500.17.